IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| LUCAS MEDINA RIVERA & | : | |
| ANTONIA DELGADO RAMOS | : | Case No. 05-09278(GAC) |
| | : | |
| | : | |
| Debtors | : | Chapter 7 |
| _____ | : | |
| | : | |
| COOPERATIVA AHORRO & CREDITO | : | |
| AGUAS BUENAS, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Adv. No. 05-00283 |
| | : | |
| LUCAS MEDINA RIVERA & | : | |
| ANTONIA DELGADO RAMOS | : | |
| | : | |
| Defendants | : | |
| _____ | : | |

**DECISION AND ORDER**

I. <u>Background</u>

Pending before this Court is a motion for summary judgment filed by the plaintiff, Cooperativa de Ahorro y Credito Aguas Buenas ("Cooperativa")(Docket #7) and an opposition filed by the debtors, Lucas Medina Rivera ("Medina") and Antonia Delgado Ramos ("Delgado") (collectively "debtors")(Docket #18). On December 16, 2005, Cooperativa filed the instant adversary proceeding to determine whether three debts owed by the debtors, in the total amount of $49,039.04, are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B)(Docket #1).

On February 2, 2006, Cooperativa filed a motion for summary

judgment asserting that it executed three consumer loans to the debtors (Docket #7). The first consumer loan dated July 8, 2003, was for the amount of $7,844.97, payable in fifty-three (53) monthly installments of $101.56, with an interest rate of 12.25% per annum. (Docket #21, Exhibit 5). The second consumer loan dated April 19, 2005, was for the amount of $27,890.27, payable in ninety-five (95) monthly installments of $439.27, with an interest rate of 12.25% per annum. (Docket #21, Exhibits 4 and 6). The third loan was a Master Card, with the latest transaction dated March 8, 2005, for the amount of $13,303.95, based on a variable interest rate of 13.5% and/or 15.5% per annum, until fully paid. Cooperativa avers that the debtors defaulted on each of these loans and remain indebted to Cooperativa.

Cooperativa contends that the debtors fraudulently and willfully misrepresented material facts regarding their financial condition inducing it to lend the debtors substantial amounts of money. Cooperativa avers that in its customary evaluation process regarding the debtors' loan applications, it reasonably relied on three financial statements that the debtors submitted, which allegedly represented their actual net income. Cooperativa asserts that these three financial statements were prepared by Carlos A. Velez de Jesus & Company, Accountants and Management Consultants. It avers that the financial statements contained the following relevant information: (a) the first statement dated September 20, 2001, regarding the fiscal year that ended on June 30, 2001,

2

reported that the debtors' net income was $81,938.00; (b) the second statement dated August 17, 2002, regarding the fiscal year that ended on June 30, 2002, reported that the debtors' net income was $94,715.00; and (c) the third statement dated October 30, 2004, regarding the fiscal year that ended on June 30, 2003, reported that the debtors' net income was $119,030.00. (Docket #21, Exhibits 1, 2 and 3).

Cooperativa avers that after the debtors filed the petition for bankruptcy, it requested an examination under Rule 2004 of the Federal Rules of Bankruptcy Procedure. It asserts that once it received debtors' tax returns for years 2002, 2003 and 2004, it noticed that the tax returns reflected a substantially lower net income compared to the net income in the financial statement submitted to Cooperativa prior to the granting of the three consumer loans. (Docket #21, Exhibits C and D). Cooperativa avers that the tax returns it examined were filed by Delgado because according to the tax returns, Medina, at all relevant times, had no reportable income because he was undergoing treatment under the Worker's Compensation Fund of Puerto Rico. Cooperativa maintains that Delgado's tax return for year 2002 reported an income of $8,009.00. Her tax return for year 2003 reported an income of $7,657.00 and finally, her tax return for year 2004 reported an income of $8,026.00. Cooperativa also asserts that although the debtors amended their statement of financial affairs for year 2004, the amount is substantially lower than the income represented in

3

the financial statement for the year ending on June 30, 2004, and different from the income tax return for the same period.

Cooperativa asserts that it relied on the debtors' representations and written statements about their income and did not became aware of the debtors' fraud until after the bankruptcy petition was filed. Cooperativa maintains that the debts owed are for money obtained by false pretenses or actual fraud, and that materially false statements were made by the debtors with an intent to deceive Cooperativa, which statements actually deceived and harmed Cooperativa, thus rendering the debts non-dischargeable under § 523(a)(2)(B) of the Bankruptcy Code. Cooperativa asserts that it is entitled to summary judgment because no genuine issues of material fact are in dispute regarding the non-dischargeability of the debts pursuant to § 523(a)(2)(B).

On April 11, 2006, the debtors filed an opposition to Cooperativa's motion for summary judgment (Docket #18). The debtors assert that the Court cannot perceive the debtors' mental state through Cooperativa's summary judgment motion or its attachments, and that the Court cannot determine whether Cooperativa justifiably relied on the financial statements based on a written motion or affidavit. They further assert that the affidavit is not correctly translated and does not prove all the elements required under § 523(a)(2)(B), particularly the elements of justifiable or reasonable reliance on the statements in determining whether to extend the credit. They assert that it is impossible with only one

4

affidavit to cross-examine Cooperativa to know if there were other factors considered in extending credit to the debtors, for example the bond to secure payment that was suggested by Cooperativa and for which payment was deducted from the loans or renovation loans, or debtors' credit worthiness with the institution. The debtors further contend that it cannot be ascertained, nor can debtors cross-examine Cooperativa to know what other due diligence was exercised by Cooperativa to investigate other sources of financial capacity by way of debtors' credit report, their tax returns contemporaneous to the loans and renovations to the loans, or other means reasonably required by any creditor who extends credit.

The debtors further contend that the prematureness of the motion for summary judgment has not allowed for discovery and assert that the evidence will show at trial and after the opportunity to initiate discovery, that there were "red flags" that should have warned a sophisticated creditor, like Cooperativa, that the debtors were overextended in their credit. The debtors assert that such "red flags" were precisely what motivated Cooperativa to suggest or require the debtors to secure payment in case of default through a bond. The debtors allege that this bond was what Cooperativa relied on to extend the credit to the debtors. They further aver that the evidence will also show that the debtors did not seek the most recent loan in the form of a renewal or renovation of a prior loan, but rather it was Cooperativa that called the debtors to renew the loan, when the prior loan had been substantially reduced to approximately $11,000.00. Moreover,

5

Cooperativa called the debtors to increase their line of credit on the Master Card.

Finally, the debtors contend that the six elements for a discharge under § 523(a)(2)(B) cannot be determined by the Court through a summary judgment motion, nor through Cooperativa's uncontested facts, nor prior to the opportunity for discovery by the debtors and not before a trial has been conducted. They contend that their state of mind is material and that there are factual questions and issues that are not susceptible to a summary judgment decision and that as such, Cooperativa has not met the burden of proof to warrant either summary judgment or a judgment of non-dischargeability. Thus, the debtors maintain that the Court cannot decide that there are no genuine issues as to whether the debtors had the actual intent to cause injury to the creditor relying on the summary judgment motion or without an evidentiary hearing on the merits. In addition, the debtors deny the intent to deceive or to cause injury. The debtors maintain that the factual disputes are outcome determinative, in that intent and reliance are crucial elements in a determination of non-dischargeability under § 523. The debtors contend that Cooperativa has not met its burden generally as to both debtors, and specifically as to debtor Delgado, and that there is an absence of proof on each and every element of its claim under § 523. The debtors request that the Court deny Cooperativa's motion for summary judgment.

On April 21, 2006, Cooperativa filed a sur-reply to debtors' opposition (Docket #20). Cooperativa contends that when the debtors

6

first applied for a loan in 2003, it asked the debtors about their financial status so that Cooperativa would had a reliable factual basis upon which to render a decision about lending the money. Cooperativa asserts that for debtors to meet the requirements, they had to submit either their tax returns or supply a financial statement prepared by a qualified third party. It asserts that the debtors chose to submit the financial statement prepared by Carlos A. Velez de Jesus & Company, Accountants and Management Consultants, rather than their income tax returns and that the net incomes were reported as true and correct in the financial statements.

Cooperativa contends that the debtors attempt to draw a factual issue from a separate requirement under the loan application, which required the applicants to seek a guaranty bond for the loan. Cooperativa contends that in this case, both Cooperativa and the debtors were informed and understood that the actual approval of the bond by the company would not be determined by the bonding company until after the debtors defaulted on the loans. Cooperativa asserts that once the debtors defaulted on the loans, the bonding company denied Cooperativa's bond claim, leaving the debtor without a guarantor and exposing themselves to Cooperativa for total liability under the loans. Thus, Cooperativa contends that the loans were not bonded. Furthermore, Cooperativa asserts that it reasonably relied on the financial statements in making the decision to enter into various loan agreements because Cooperativa knew that the guaranty bond was conditional and that

the bonding company could deny coverage upon default.

Cooperativa maintains that the debtors do not deny that they defaulted on the loans, do not contest that they provided Cooperativa with written financial statements prepared by Carlos A. Velez de Jesus & Company, Accountants and Management Consultants describing their financial condition, do not contest or provide any rebuttal evidence by way of affidavit or otherwise, and do not contest the fact that the financial statements contained materially false information and were published with the intent to deceive. Cooperativa asserts that it relied on the financial statements and not on the bond because it was conditional. It further states that it is uncontroverted that the financial statements were prepared by a large and reputable firm of accountants and that it had an ongoing relationship with the debtors between 2003 and 2005. Cooperativa maintains that it has met all six elements of § 523(a)(2)(B) and that although the debtors mentioned "red flags," they fail to provide evidence, because non existed. It contends that the information provided by the debtors in the statements assured Cooperativa that their condition was sound.

Finally, as to the prematureness of the motion for summary judgment alleged by the debtors, Cooperativa contends that the debtors have not engaged in any discovery, that they failed to file an answer to the complaint within the time required and that when they filed for an extension of time, it was well after the deadline. Furthermore, Cooperativa asserts that the debtors do not present in their opposition or in the affidavit submitted, how

8

discovery will impact the outcome of the Court's determination of Cooperativa's motion for summary judgment. It asserts, that parties opposing summary judgment may not rest on vague assertions that additional discovery will produce unspecified facts to defeat a summary judgment, instead they are required to state with some specificity that material is sought and how the material will help in opposing summary judgment. Cooperativa asserts that the debtors fail to present any procedural reasons for not granting Cooperativa's motion and thus, it requests that the Court grant the summary judgment motion and enter a judgment of non-dischargeability.

II. <u>Discussion</u>

    A. <u>Summary Judgment Standard</u>

Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b); <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317 (1986) (<u>citing</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986)). As to issues on which the movant, at trial, would be compelled to carry the burden of proof, it must identify those portions of the pleadings which it believes demonstrate that there is no genuine issue of material fact. <u>In re</u>

<u>Edgardo Ryan Rijos v. Banco Bilbao Vizcaya & Citibank (In re
Rijos)</u>, 263 B.R. 382, 388 (B.A.P. 1st Cir. 2001).  Once the movant
makes a *prima facie* showing that there are no genuine issues of
material fact, the burden of proof shifts to the party opposing the
motion for summary judgment to establish that there are questions
of fact. 10 *Collier on Bankruptcy*, ¶ 7056.04, p. 7056-8 (15th ed.
2006). The Court must view the evidence in the light most favorable
to the nonmoving party. <u>In re Rijos</u>, 263 B.R. 382, at 388.
Therefore, summary judgment is "inappropriate if inferences are
necessary for the judgment and those inferences are not mandated by
the record." <u>Id</u>.

    B. <u>Exceptions to Discharge § 523(a)(2)(B)</u>

    In the case before us, Cooperativa seeks a determination that
the debts owed to it are non-dischargeable pursuant to 11 U.S.C. §
523(a)(2)(B). Section 523(a)(2)(B) provides that:

> (a)  A discharge under section 727, 1141,
> 1228(a) 1228(b), or 1328(b) of this title does
> not discharge an individual debtor from any
> debt-
>
>> (2) for money, property, services, or an
>> extension, renewal, or refinancing of
>> credit, to the extent obtained, by-
>>> (B) use of a statement in writing-
>>>> (i) that is materially false;
>>>>
>>>> (ii) respecting the debtor's or
>>>> an  insider's  financial
>>>> condition;
>>>>
>>>> (iii) on which the creditor to
>>>> whom the debtor is liable for
>>>> such money, property, services,
>>>> or credit reasonably relied;
>>>> and

10

(iv) that the debtor caused to be made or published with intent to deceive;

11 U.S.C. § 523(a)(2)(B). Thus, pursuant to § 523(a)(2)(B), if a debtor uses a written statement regarding his financial condition, that is materially false and made or published with an intent to deceive and the creditor reasonably relied upon the statement in extending credit, the resulting debt is non-dischargeable. Another requirement added by the Fist Circuit Court of Appeals is that the financial institution or bank demonstrate that it was damaged by the debtor's submittal of the false financial statement. In re Goodrich, 999 F.2d 22 (1st Cir. 1993). "At the trial on a complaint objecting to discharge, the plaintiff has the burden of proving the objection." Fed. R. Bankr. P. 4005. Each of the elements must be proved by a preponderance of evidence. See Field v. Mans, 516 U.S. 59 (1995) and Grohan v. Garner, 498 U.S. 279 (1991).

1. Writing

The first element that Cooperativa has the burden of proving is that it received a financial statement that is in "writing." The statement must have been written by the debtor, signed by the debtor or written by someone, but adopted by the debtor. 4 *Collier on Bankruptcy*, ¶ 523.08[2], p. 523-46 & 523-47 (15th ed. 2006). In the present case, Cooperativa asserts that the debtors submitted three financial statements prepared by Carlos A. Velez de Jesus & Company, Accountants and Management Consultants. It asserts that the debtors' financial statements were received with their loan

11

applications and were dated: September 20, 2001, regarding the fiscal year that ended on June 30, 2001; August 17, 2002, regarding the fiscal year that ended on June 30, 2002; and October 30, 2004, regarding the fiscal year that ended on June 30, 2003. Cooperativa offered into evidence the three financial statements together with debtors' loan applications. (Docket #21, Exhibits 1, 2, 3, 4, 5 and 6).

The debtors do not rebut any of the aforementioned and do not present evidence that rebuts Cooperativa's contentions that it received three financial statements from the debtors with their loan applications. After examining the statements, the Court concludes that Cooperativa received three written statements prepared by Carlos A. Velez de Jesus & Company, Accountants and Management Consultants, signed by Medina and thus, adopted by him.

2. <u>Materially False Information</u>

The second requirement is that the financial statement has to contain materially false information.

> A statement is materially false if it paints a substantially untruthful picture of financial conditions by misrepresenting information of the type that would normally affect the decision to grant the credit.

4 *Collier on Bankruptcy*, ¶ 523.08[2][b], p. 523-47 (15th ed. 2006). After an examination of the exhibits submitted by Cooperativa, this Court concludes that the financial statements reflect vastly different incomes than those stated in the debtors' tax returns.

a. <u>Net Income for year 2001</u>

Medina's financial report, while doing business as Lucas' Fashion, dated September 20, 2001, reflects a net income of $81,938.00 for year 2001. (Docket #21, Exhibit 1). Delgado's W-2 Form reflects that she earned $8,009.83 in year 2001. (Docket #10, Exhibit B page 3). The tax return for this year was not submitted as evidence. Thus, this Court cannot conclude what the combined income of the debtors was for year 2001.

b. <u>Net Income for year 2002</u>

Medina's financial statement, dated August 17, 2002, reflects a net income of $94,715.00 for year 2002. (Docket #21, Exhibit 2). Delgado's W-2 Form reflects that she earned $7,657.48 in year 2002. (Docket #10, Exhibit C page 6). Medina's tax return for year 2002 reflects that he was on leave with the State Insurance Fund and that his income for that year was $7,657.00. (Docket #21, Exhibit C). This amount reflects the same amount as that included in Delgado's W-2 Form. Because both amounts are the same, the Court concludes that Medina did not earn money in year 2002. Thus, the combined income for both debtors was $7,657.00 compared to the $94,715.00 reported in Medina's financial statement.

c. <u>Net Income for year 2003</u>

Medina's financial statement, dated October 30, 2004, reflects a net income of $119,030.00 for year 2003. (Docket #21, Exhibit 3). Delgado's W-2 Form reflects that she earned $8,026.51 in year 2003. (Docket #10, Exhibit D page 5). Medina's tax return for this year

13

reflected that he was on leave with the State Insurance Fund and that his income for year 2003 was $8,026.00. (Docket #21, Exhibit D). Again, this amount is the same amount as in Delgado's W-2 Form and the Court concludes that debtor Medina did not have income in year 2003. Thus, the combined income for both debtors was $8,026.00 compared to the $119,030.00 reported in Medina's financial statement.

The debtors do not rebut any of the evidence submitted by Cooperativa. This Court concludes that in years 2002 and 2003, Medina submitted financial statements that did not represent an accurate picture of debtors' financial situation. It is materially false information to represent that Medina was earning, in years 2002 and 2003, more than $90,000.00, compared to having no income.

3. <u>Statement Regarding Debtor's Financial Condition</u>

The bankruptcy court in <u>In re Flaherty</u>, stated that § 523(a)(2)(B) refers to a special kind of financial statement "'one that specifically states a debtor's or insider's net worth.'" 335 B.R. 481 at 490 (Bankr. D.Mass. 2005)(<u>citing</u> <u>In re Seaborne</u>, 106 B.R. 711, 713 (Bankr. M.D.Fla. 1989)). Cooperativa asserts that the three financial statements received were regarding debtor's financial condition. (Docket #21, Exhibits 1, 2 and 3). The debtors do not rebut Cooperativa's evidence and thus, there is no dispute. After a simple examination of the exhibits, the Court concludes that the three financial statements contain information regarding Medina's net income, his assets, his debts, capital and net worth,

14

doing business as Lucas' Fashion.

4. Cooperativa's reasonable reliance

Cooperativa has to show that it reasonably relied on debtors' financial statements to extend the credit. The bankruptcy court in In re Flaherty, describes the factors to consider when making this type of determination, the court should consider:

> (1) whether the creditor had a close personal relationship or friendship with the debtor; (2) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

335 B.R. 481 at 491 (Bankr. D.Mass. 2005)(citing In re Harloff, 272 B.R. 496, 500 (Bankr. M.D.Fla. 2001)).

Cooperativa asserts that it relied on the debtors' representations and written statements about their income. Cooperativa asserts that it had an ongoing relationship with the debtors between 2003 and 2005. Cooperativa contends that when the debtors first applied for a loan, it asked the debtors about their financial status so that Cooperativa would have a reliable factual basis upon which to render a decision about lending the money. Cooperativa asserts that for debtors to meet the requirements, they had to submit either their tax returns or a financial statement prepared by a qualified third party. It asserts that the debtors

chose to submit the financial statement prepared by Carlos A. Velez de Jesus & Company, Accountants and Management Consultants, which is a large and reputable firm, rather than their income tax returns and that the net incomes were reported as true and correct in the financial statements. It contends that the information provided by the debtors in the statements assured Cooperativa that their condition was sound and that although the debtors mentioned "red flags," non existed.

Cooperativa contends that the debtors attempt to create a factual issue from a separate requirement under the loan application, which required the applicants to seek a guaranty bond for the loan. Cooperativa contends that in this case, both Cooperativa and the debtors were informed and understood that the actual approval of the bond by the company would not be determined by the bonding company until after a default on the loans. Thus, Cooperativa contends that the loans were not bonded. Furthermore, Cooperativa asserts that it reasonably relied on the financial statements in making the decision to enter into various loan agreements because Cooperativa knew that the guaranty bond was conditional and that the bonding company could deny coverage upon default.

Debtors assert that Cooperativa has not proven that there was justifiable or reasonable, or actual reliance on the financial statement. They assert that it is impossible to know if there were other considerations used by Cooperativa, for example the bond to

16

secure payment that was suggested by Cooperativa and for which payment was deducted from the loans or renovation loans, or debtors credit worthiness with the institution. The debtors further contend that it cannot be ascertained what other due diligence was exercised by Cooperativa to investigate other sources of financial capacity by way of debtors' credit report, their tax returns, contemporaneous to the loans and renovations to the loans, or other means reasonably required by any creditor who extends credit. They further assert that the evidence will show that there were "red flags" that should have warned a sophisticated creditor, like Cooperativa, that this debtor was overextended in his credit. The debtors assert that such "red flags" were precisely what motivated Cooperativa to suggest or require the debtors to secure payment in case of default through a bond. The debtors allege that this bond was what Cooperativa relied on to extend the credit to the debtors.

In the present case, the parties have not submitted enough evidence to support a finding on Cooperativa's reasonableness in relying on debtors' representations. The Court has no way of determining Cooperativa's procedure for extending credit compared to other financial institutions; the type of relationship Cooperativa had with the debtors; whether the relationship was one of trust; how "red flags" are defined; nor how Cooperativa is certain that there were no "red flags" in the applications or in the financial statements that would alert Cooperativa that the debtors were submitting materially false information.

17

5. <u>Debtor's intent to deceive</u>

Cooperativa has the burden of proving that the debtors' false statement "was either knowingly false or made so recklessly as to warrant a finding that the debtor acted fraudulently." 4 *Collier on Bankruptcy*, ¶ 523.08[2][e], p. 523-50 (15th ed. 2006). Summary judgment motions on discharge are ordinarily not granted because they usually involve questions of motive and intent. 10 *Collier on Bankruptcy*, ¶ 7056.04, p. 7056-7 (15th ed. 2006). But, if evidence of fraud is conclusive enough and the debtor's action yields no other plausible conclusion but that his intent was fraudulent, then the evidence presented may be enough to grant a motion for summary judgment. <u>See In re Marrama</u>, 445 F.3d 518 at 522 (1st Cir. 2006)(citing <u>In re Varrasso</u>, 37 F.3d at 764 (1st Cir. 1994)). In <u>In re Marrama</u>, the First Circuit Court of Appeals explains that "[i]n certain cases, circumstantial evidence may be sufficiently potent to establish fraudulent intent beyond hope of contradiction." <u>Id</u>.

As discussed above, Medina's financial statement were materially false and demonstrate an intent to deceive by representing that he was earning in excess of $90,000.00 per year compared to having no income. The financial statements were submitted to Cooperativa to induce it to extend a loan. Medina denies the allegation that he had an intent to defraud Cooperativa, but offers no explanation for submitting financial statements that were materially false. Although, the debtors assert that the Court cannot perceive their mental state through Cooperativa's summary

18

judgment motion or the attachments, the Court concludes that the only evidence adduced establishes fraudulent intent beyond hope of contradiction. There is no other plausible rationalization.

C. <u>Conclusion</u>

Federal Rule of Bankruptcy Procedure 7056(e), expressly provides that "[w]hen a motion for summary judgment is made, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading." In the present case, the debtors did not present rebuttal evidence that they did not default on the loans, that they did not provide Cooperativa with written financial statements prepared by Carlos A. Velez de Jesus & Company, Accountants and Management Consultants describing their financial condition, and that they contained materially false information. Debtors only deny the allegations without submitting an explanation or evidence.

Cooperativa avers that there are no issues of material fact but, the Court can not determine wether Cooperativa reasonably relied on Medina's financial statements when it extended credit to the debtors. Related to this, the Court does not have evidence as to the procedure established by Cooperativa to ensure debtors' credit worthiness. The Court is not in a position to grant Cooperativa's summary judgment motion because Cooperativa has not met its burden of establishing all of the elements necessary for a determination as to the dischargeability of its debts.

ORDER

**IT IS ORDERED** that the Motion for Summary Judgment filed by Cooperativa de Ahorro y Credito Aguas Buenas (Docket #7) is DENIED.

An evidentiary hearing is scheduled for August 1, 2007 at 9:00 a.m. in the United States Bankruptcy Court to consider wether Cooperativa de Ahorro y Credito Aguas Buenas reasonably relied upon Medina's financial statements in extending credit to the debtors.

SO ORDERED.

San Juan, Puerto Rico, this 10th day of May 2007.


/s Gerardo A. Carlo-Altieri

_____
GERARDO A. CARLO-ALTIERI
Chief, U.S. Bankruptcy Judge

20